T.C. Summary Opinion 2008-65

UNITED STATES TAX COURT

SAMRA AND SHAH ADEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21982-05S.                    Filed June 10, 2008.

Samra and Shah Adel, pro sese.

<u>Michael T. Sargent</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for

the year in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.

Respondent determined a $3,034 deficiency in petitioners'
Federal income tax for 2002. The sole issue for decision is
whether petitioners are entitled to a theft loss deduction for
the taxable year at issue.

### Background

Some of the facts have been stipulated and are so found.
The stipulation of facts and the attached exhibits are
incorporated herein by this reference. Petitioners resided in
Virginia when they filed their petition.

Petitioners were born and raised in Afghanistan, where they
met and were married. In 1980 in the midst of the Soviet-Afghan
War, petitioners fled Afghanistan for Pakistan. Needing cash for
their journey but unable to sell their greatest assets (a house
and a Mercedes-Benz automobile) because of government-imposed
restrictions on the sale of such assets,[1] petitioners arranged to
sell their car to an uncle for $25,000. The uncle had some cash
on hand to complete the transaction but not to pay the full price
of the car, $25,000. Petitioners and the uncle agreed that the
difference would be satisfied by the transfer of a gold and

---

[1] Transactions between unrelated parties were prohibited,
heavily monitored, or both.

emerald jewelry set that the uncle had in his possession as a result of a bequest from his grandmother.

Before embarking upon their journey to Pakistan, petitioners took the jewelry set (comprising a necklace, ring, earrings, and a bracelet) to an Afghani jewelry appraiser. The appraiser, who was both appraising the pieces and setting a price in case petitioners wished to sell him the set, valued the jewelry at "11,300 U.S. dollars". Because of the unstable political environment causing many similarly situated families to attempt to sell such jewelry sets, petitioners decided to retain the set in the hope of attaining a higher price for it in either Pakistan or another country.

After 1 year in Pakistan, petitioners emigrated to Canada, where they lived from 1981 through 1998. While they lived in Canada, petitioners kept the jewelry in a safe deposit box at their bank. They did not have any further appraisal done on the set while living in Canada.

In 1998 petitioner husband (Mr. Shah) was offered a position with the "U.S. Trade Office" and later as a military consultant and translator. Petitioners moved to Virginia sometime in 1998 and have lived there since in a three-story, single-family home. Petitioners have family in Canada and Afghanistan and occasionally travel to both places to visit their relatives.

In late February 2002 petitioner wife traveled to visit her ailing mother in Canada. At or about this same time, Mr. Shah had oral surgery. While Mr. Shah was recuperating, he stayed in a bedroom on the top floor of their three-story home. Sometime between February 24 and February 26, 2002, petitioners' home was burglarized. The burglary occurred in the basement of the home while Mr. Shah was on the top floor convalescing.

On February 26, 2002, petitioners filed a police report with the Prince William County Police Department in Manassas, Virginia, wherein they detailed the items stolen as follows: (1) A Sony Playstation 2 video game console, game controllers, and a memory card ($850 value); (2) a stereo ($110 value); (3) a camcorder ($500 value); and (4) an emerald and gold jewelry set. The values reported for the articles in the set were as follows: (1) Necklace--$12,000; (2) earrings--$7,000; (3) ring--$5,000; and (4) bracelet--$8,000. The total value on the police report for all items reported stolen was $33,460. None of the items stolen were ever recovered, and petitioners' homeowners insurance covered only the value of the nonjewelry items taken in the burglary and the damage done to petitioners' home.

During the year in issue, petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, which was prepared by a paid tax return preparer. Petitioners reported adjusted gross income of $47,870. Petitioners attached a Form 4684, Casualties

and Thefts, to their 2002 return. Petitioners' Form 4684 listed their cost basis in the items stolen as $33,767[2] less an insurance reimbursement of $3,985. After subtracting the $100 limitation imposed on theft losses under section 165(h)(1), and the adjusted gross income limitation under section 165(h)(2), petitioners computed the amount of their total theft loss on Form 4684 to be $24,895 and claimed a casualty and theft loss deduction for the same amount on Schedule A, Itemized Deductions.

On October 13, 2005, respondent sent petitioners a statutory notice of deficiency wherein respondent determined a deficiency of $3,034 resulting from the disallowance of petitioners' claimed deduction for theft loss for lack of substantiation.

## Discussion

In general the Commissioner's determination in a notice of deficiency is presumed correct, and the burden of proof is on the taxpayer to prove otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to deductions claimed on a return. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Under certain circumstances, the burden of proof with respect to relevant factual issues may shift to the Commissioner

[2] The record is silent as to the discrepancy between the total loss figure contained in the police report ($33,460) and the figure listed on Form 4684 ($33,767).

under section 7491(a).  Petitioners have not alleged that section 7491(a) applies, and therefore, the burden of proof has not shifted to respondent.

Respondent's position is that petitioners have failed to substantiate either their bases in or the fair market values immediately before the theft of the items stolen for which they claimed a theft loss deduction on their 2002 return.  Petitioners have presented evidence only with respect to the jewelry set, and it is petitioners' contention that the car sale price, the Afghani jeweler's appraisal of the set, and their own estimate of the appreciated value of the set over the course of 22 years adequately substantiate their basis in, and the fair market value of, the set.

Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise.  For individuals, section 165(c)(3) allows a taxpayer to deduct a loss from theft.  The deduction is only allowed to the extent that the loss exceeds $100 and to the extent that the net loss exceeds 10 percent of adjusted gross income.  Sec. 165(h)(1) and (2).  The amount allowed as a deduction is the lesser of:  (1) The difference between the fair market value of the property immediately before and after the theft, and (2) the adjusted basis in the property.  Helvering v. Owens, 305 U.S. 468 (1939); secs. 1.165-7(b), 1.165-8(c), Income Tax Regs.  In

applying section 1.165-7(b), Income Tax Regs., the fair market value of the property immediately after the theft is zero. Sec. 1.165-8(c), Income Tax Regs.

Inherent in section 165 are several requirements. First, the taxpayer must have been the owner of the property at the time of the loss. Draper v. Commissioner, 15 T.C. 135 (1950). The parties agree that petitioners owned the jewelry set at the time of the theft. In addition to the ownership requirement, either the taxpayer's basis in the stolen property or the fair market value of the property immediately before the theft must be ascertained. Secs. 1.165-7(b), 1.165-8(c), Income Tax Regs. Where a taxpayer fails to credibly establish either the basis or the fair market value of the property immediately preceding the theft, we are unable to determine the amount of loss deductible. See id.

On the basis of petitioners' account of the sale of their car in 1980, we are unclear as to how much of the $25,000 purchase price was satisfied by petitioners' uncle through the transfer of his grandmother's jewelry set. While we believe that petitioners did sell the car to their uncle for $25,000, we also believe that their uncle gave them cash for at least one-half of the stated value of the car, $25,000. Therefore, on the basis of this analysis, we find that petitioners' basis in the jewelry set could be no more than $12,500, although petitioners themselves

provided no documentation or credible testimony to establish the amount of cash their uncle gave them for the car.  Accordingly, we find that petitioners have failed to adequately substantiate their basis in the jewelry set for purposes of determining the deductible amount of theft loss.  See id.

Petitioners next argue that the Afghani jeweler's 1980 appraisal, coupled with their estimate of the appreciation of the jewelry set over the course of 22 years, should suffice as credible substantiation of the fair market value of the jewelry set for purposes of their claiming a $24,895 theft loss deduction.  For the following reasons, we disagree.

First, petitioners claimed a $24,895 deduction for the loss of four pieces of gold and emerald jewelry.  This amount reflects petitioners' estimate of the replacement cost of those items and therefore is not the appropriate standard.  See Jenny v. Commissioner, T.C. Memo. 1977-142.  With respect to the $24,895 figure claimed on their return, petitioners presented no evidence to establish the fair market value of the jewelry immediately before the theft.  The only credible evidence presented was a translated copy of the Afghani jeweler's 1980 appraisal.  While we find the appraisal to be credible, we have serious doubts as to petitioners' estimate of the fair market value of the jewelry before the theft.  We acknowledge, generally, that the prices of gold and gemstones have risen markedly over the past 22 years,

and we are confident that that amount would be greater than even the highest basis we have already presumed that petitioners could have had in the jewelry ($12,500). However, because the amount allowed as a deduction is limited to the lesser of either the fair market value of the property immediately preceding the theft or the taxpayer's basis, the amount of the allowable deduction would be limited to petitioners' basis in the jewelry set. See sec. 1.165-8(c), Income Tax Regs.

As previously discussed, we lack credible evidence to specifically determine petitioners' basis in the jewelry set. In the absence of such evidence, we will apply our best judgment to approximate this amount. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Bearing heavily against the taxpayer "whose inexactitude is of his own making", id. at 544, we find that petitioners' basis in the jewelry set before the theft was $5,000.

Because petitioners did not receive any insurance reimbursement for the jewelry, no amount for such reimbursement must be deducted. The amount of theft loss deduction to which petitioners are entitled is, however, limited: petitioners must first deduct $100 from the total amount of allowable loss under section 165(h)(1). Second, under section 165(h)(2), petitioners are allowed a deduction only to the extent that the amount allowable exceeds 10 percent of the petitioners' adjusted gross

income.   The allowable amount is $4,900.   After applying section 165(h)(2), the total theft loss amount allowable is $113.

<u>Decision will be entered</u>

<u>under Rule 155</u>.